David R. King
dking@herrick.com
Leah Kelman
lkelman@herrick.com
HERRICK FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000

Richard S. Mandel (to be admitted *pro hac vice*)
Jonathan Z. King (to be admitted *pro hac vice*)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY  10036
(212) 790-9200

Attorneys for Plaintiffs
Promotion In Motion, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------x

PROMOTION IN MOTION, INC.,

                Plaintiff,

    v.

HARIBO OF AMERICA, INC.

                Defendant.

19-CV-

**COMPLAINT**

------------------------------------------------------------x

Plaintiff Promotion In Motion, Inc. ("PIM"), by and through its undersigned attorneys, as and for its Complaint in this action against Haribo of America, Inc. ("Haribo"), having an address at 9500 West Bryn Mawr Avenue, Suite 700, Rosemont, IL 60018, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action for trademark and trade dress infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq., and corresponding state law, to halt Haribo's infringement of PIM's registered trade dress in its popular and successful SOUR JACKS product.

## PARTIES

2.      PIM is a Delaware corporation with a principal place of business at 25 Commerce Drive, Allendale, New Jersey 07401.

3.      Upon information and belief, Defendant Haribo is a Delaware corporation with a principal place of business at 9500 West Bryn Mawr Avenue, Suite 700, Rosemont, IL 60018. Upon information and belief, Haribo is in the business of manufacturing and importing various candy products for sale in the United States.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1331 and 1338, and pursuant to principles of supplemental jurisdiction.

5.      This Court has personal jurisdiction over Haribo because, upon information and belief, it is doing business in New Jersey and has committed tortious acts within New Jersey by selling the infringing products from which this dispute arises in this jurisdiction.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c).

## FACTS

**PIM's SOUR JACKS Wedge Product**

7.      PIM is in the business of developing, manufacturing, marketing, and distributing branded confectionery, snack and candy products.

8. In developing its own proprietary candy brands, PIM expends great effort in creating appealing and distinctive recipes, formulas, product attributes, shapes, graphics, brand names and packaging to distinguish its products in the marketplace.

9. One of PIM's longstanding and successful brands is its SOUR JACKS candies, soft-and-chewy sour candies that have proven extremely popular among children and teenagers. SOUR JACKS was originally introduced in the early 1990s in the shape of a little boy, and this version is still sold as SOUR JACKS Original.

10. Beginning in 2003, PIM introduced an extension of the SOUR JACKS brand using a different formulation, boasting a different taste, and featuring a distinctive and highly recognizable three-dimensional trapezoid shape, referred to as "The Wedge," rendered in a green/white/red color combination. An image of the product is shown below:



(the "SOUR JACKS Wedge Product").

11. In introducing this new version of SOUR JACKS, PIM designed the unusual three-dimensional trapezoid shape and three-color combination pictured above to distinguish the product in the marketplace. This design is characterized by five flat surfaces and edges angling vertically upward. Among the five flat surfaces are a flat rectangular bottom, triangular right and left sides, and trapezoidal front and back planes. The overall appearance is of a trapezoid rendered in three dimensions. A thin white band of color divides the red top from the flat green

base of the piece. This design and color combination is referred to hereinafter as "PIM's Trade Dress."

12.     PIM has used PIM's Trade Dress in connection with the SOUR JACKS Wedge Product since 2003. After introduction of the original watermelon flavor, PIM extended the line in 2015 by introducing lemonade, wildberry and green apple versions configured in the same distinctive shape, but with the colors adjusted for each different version.

13.     PIM's Trade Dress is not functional. It does not replicate the actual shape of a particular fruit, serves no utilitarian function or other purpose affecting the cost or quality of the product, and provides no manufacturing or practical advantage in producing or packaging the product.

14.     PIM uses PIM's Trade Dress not only as the configuration and design of the product itself, but also prominently features it on product packaging in order to distinguish the brand in the marketplace and identify PIM as its source. Examples of some retail packages of the SOUR JACKS Wedge Product as depicted on the www.sourjacks.com website appear below:



As reflected in the above example, both the packaging and associated marketing imagery for the SOUR JACKS Wedge Product displays PIM's Trade Dress to cement its association with the brand in the minds of consumers. Other flavors of PIM's SOUR JACKS Wedge Product similarly display the signature shape of the product on packaging, as illustrated below:

  

15.     PIM aggressively advertises and promotes PIM's Trade Dress when it markets its SOUR JACKS Wedge Product. PIM has spent millions of dollars advertising the SOUR JACKS Wedge Product through various media, including online, point of sale materials such as in-store displays, trade advertising, free standing inserts and in-theater concession advertising. PIM also promotes the product via the dedicated website noted above at www.sourjacks.com, and on social media platforms, including Twitter, Facebook and Instagram.

16.     PIM's advertising for the SOUR JACKS Wedge Product expressly calls attention to PIM's Trade Dress and its signature shape as an indication of source throughout PIM's promotions, advertisements and communications to the public. For example, PIM repeatedly uses the federally registered slogan "RESPECT THE WEDGE" on packaging, websites and in promotions, as illustrated below:

5



17. PIM also ran a "LIVIN' ON THE WEDGE" sweepstakes, and has used that phrase in advertising and promoting the product, again to call attention to PIM's Trade Dress as a key source identifier for the product, as illustrated below.



18. As another example, the www.sourjacks.com website urges consumers to look for the shape of the product when it encourages them to "CHECK OUT THE ULTIMATE SHAPE OF SOUR!" This repeated graphic and promotional emphasis on the wedge shape ensures that

6

the public understands that PIM's Trade Dress identifies PIM and PIM alone as the source of these popular products.

19. PIM's SOUR JACKS Wedge Product is also sold in bulk form to distributors who then either repackage the products under private label store brands or sell them to a wide variety of outlets, such as candy and nut shops, candy kiosks, ice cream shops, fudge shops, grocery stores, movie theaters, theme parks and bulk candy stores as found at shopping malls and tourist and leisure attractions, all of which then offer the products for sale in bulk form. In these contexts, consumers use PIM's Trade Dress to identify the product.

20. PIM's SOUR JACKS Wedge Product has been a great commercial success, generating millions of dollars in sales annually. PIM has sold approximately $30 million worth of the product at wholesale. The product has become extremely popular with children and teenagers, and sales are growing every year.

21. The SOUR JACKS Wedge Product is available in multiple trade channels that expose the product to consumers nationwide, including large chain stores (such as Walmart and Target), drug store chains (CVS, Rite-Aid, Walgreen's), supermarkets (Kroger, Safeway, Shop-Rite), theater concessions, candy stores, and online merchants ranging from Amazon to specialty retailers.

22. As a result of the commercial success and years of promotion of PIM's SOUR JACKS Wedge Product, PIM's Trade Dress has become well known to consumers and the trade and has developed significant goodwill for PIM as the source of the product.

23. PIM's Trade Dress has acquired secondary meaning among the relevant class of consumers and the trade and thus serves as a distinctive source identifier.

24. PIM owns a valid and subsisting federal registration (Reg. No. 5,029,701) for PIM's Trade Dress (the "PIM Registration"). The PIM Registration identifies the mark as one that "consists of the shape of a wedge for candy, with an upper green section with white speckles, followed by a narrow middle white section and followed by a lower red section with white speckles," as pictured below:



**Haribo's Infringing Conduct**

25. At the recent Sweets & Snacks trade show in May 2019, PIM just learned that Defendant Haribo is introducing a knock-off gummy candy product that copies the distinctive trapezoid configuration and three-color scheme constituting PIM's Trade Dress and protected by the PIM Registration. An image of the Haribo product as announced in the press appears below:



As displayed in the package's window, the shape and color combination of the Haribo product closely imitates the trapezoidal shape and three-color combination of PIM's Trade Dress.

26. Haribo's use of a product shape and color combination that is so closely similar to that used for the genuine SOUR JACKS creates a strong likelihood that consumers will think Haribo's product emanates from the same source as the genuine SOUR JACKS products manufactured by PIM. Indeed, that likelihood of confusion is further enhanced by the fact that the Haribo package uses the same shade of pink background color as the package for PIM's watermelon SOUR JACKS Wedge Product.

27. Upon information and belief, Haribo was aware of PIM's Trade Dress before it adopted its confusingly similar sour watermelon product.

28. Upon information and belief, Haribo's infringing product is being marketed and sold to the same class of candy consumers to whom PIM's SOUR JACKS Wedge Product is promoted and sold, and is being sold in the same channels of trade and through the same retail outlets as PIM's SOUR JACKS Wedge Product.

29. The young consumers for PIM's SOUR JACKS Wedge Product and Haribo's infringing product, both of which are low-cost impulse purchases, are particularly vulnerable to confusion between the sources of the two products.

30. Haribo's infringing product is likely to cause confusion, mistake and deception among consumers as to the source and origin of such goods, and is likely to deceive the public into believing that Haribo's goods originate from, are associated with or are authorized or licensed by PIM or the producer of SOUR JACKS, or that Haribo's goods are from the same source as PIM's, all to the damage and detriment of PIM's goodwill and sales.

31. Upon information and belief, by virtue of its unlawful conduct, Haribo has made or will make substantial profits and gains to which it is not in law or equity entitled.

32. As a result of Haribo's actions, PIM has been damaged in an amount to be determined at trial.

33. Haribo's unlawful activities result in irreparable harm and injury to PIM, and PIM has no adequate remedy at law.

34. PIM has demanded that Haribo immediately cease any further distribution of the infringing product, but upon information and belief, Haribo continues to sell the product and will not cease such sales unless enjoined.

## FIRST CLAIM FOR RELIEF
### (Violation of Section 32(1) of the Lanham Act)

35. PIM repeats and reincorporates the allegations contained in Paragraphs 1 through 34 above as if fully set forth herein.

36. Haribo's sale of its infringing watermelon candy as described above infringes the PIM Registration and thus constitutes infringement of a registered trademark in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## SECOND CLAIM FOR RELIEF
### (Violation of Section 43(a) of the Lanham Act)

37. PIM repeats and reincorporates the allegations contained in Paragraphs 1 through 36 above with the same force and effect as if set forth herein.

38. Haribo's sale of its infringing watermelon candy as described above infringes PIM's Trade Dress and thus constitutes trade dress infringement, false designations of origin, and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

**THIRD CLAIM FOR RELIEF**
**(Common Law Unfair Competition)**

39. PIM repeats and reincorporates the allegations contained in Paragraphs 1-38 above with the same force and effect as if set forth herein.

40. Haribo's sale of its infringing watermelon candy as described above infringes PIM's Trade Dress and constitutes unfair competition in violation of the common law of the State of New Jersey.

WHEREFORE, Plaintiff demands judgment against Haribo as follows:

1. Haribo, its officers, agents, servants, employees, representatives, parents, subsidiaries, affiliates, divisions, successors and assigns and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be preliminarily and permanently enjoined from:

    A. Infringing PIM's Trade Dress, including, without limitation, by selling candies in a confusingly similar shape and/or color combination to that protected by the PIM Registration; and

    B. Committing any other act calculated or likely to cause the public to believe that Haribo or its goods are in any way connected, affiliated or associated with PIM or its goods, or from otherwise competing unfairly with PIM.

2. Pursuant to 15 U.S.C. § 1118, that Haribo deliver up for destruction all material (including, without limitation, all packaging, catalogs, advertisements, promotional materials, brochures, signs, displays and/or stationary), within its possession, custody or control, either directly or indirectly, that bears a package design, shape or configuration or color combination confusingly similar to PIM's Trade Dress and/or the PIM Registration.

3. Pursuant to 15 U.S.C. § 1116(a), that Haribo be directed to file with the Court and serve upon PIM, within thirty (30) days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which it has complied with the provisions set forth in paragraphs 1 and 2 above;

4. Pursuant to 15 U.S.C. § 1117(a), that Haribo be directed to account to Plaintiff for all gains, profits and advantages derived from its wrongful acts and to pay Plaintiff all damages sustained as a result of Haribo's unlawful conduct;

5. Pursuant to 15 U.S.C. § 1117(a), that Plaintiff recover from Haribo the greater of three times the amount of Haribo's profits or any damages sustained by Plaintiffs, together with interest on such amount and the costs of this action;

6. Pursuant to 15 U.S.C. § 1117(a), that Plaintiff recover from Haribo attorneys' fees and costs in this action; and

7. That Plaintiff have such other and further relief as the Court deems just, equitable and proper.

Dated: Newark, New Jersey  
       June 24, 2019

Respectfully submitted,

HERRICK FEINSTEIN LLP

By: *s/David R. King*  
    David R. King  
    Leah Kelman  
One Gateway Center  
Newark, New Jersey 07102  
(973) 274-2000

COWAN, LIEBOWITZ & LATMAN, P.C.  
Richard S. Mandel (to be admitted *pro hac vice*)  
Jonathan Z. King (to be admitted *pro hac vice*)  
114 West 47th Street  
New York, NY 10036  
(212) 790-9200