<u>**UNDER SEAL – NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PIM BRANDS, INC.,** *Plaintiff*, v. **HARIBO OF AMERICA, INC.,** *Defendant.* | Civil Action No. 19-14183 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendant Haribo of America, Inc.'s ("Defendant" or "Haribo") Motion for Summary Judgment. ECF No. 66. Plaintiff PIM Brands, Inc. ("Plaintiff" or "PIM") opposes Defendant's motion. ECF No. 77. For the reasons set forth below, Defendant's motion is **GRANTED**.

**I.  BACKGROUND**

This action arises out of Defendant's alleged infringement of Plaintiff's trade dress rights in a watermelon-flavored wedge-shaped sour candy product. <u>See</u> Compl., ECF No. 1. Specifically, Plaintiff claims that Defendant created a knockoff of its sour candy product in violation of the Lanham Act and New Jersey common law. <u>See id.</u> Although the parties raise several arguments in their briefing, the threshold issue is whether Plaintiff's product configuration is protectible as trade dress. Because the Court finds that Plaintiff's product configuration is functional, and therefore not eligible for trade dress protection, Defendant's motion for summary judgment is granted.

A. **Factual Summary**[1]

Plaintiff develops, manufactures, markets, and distributes branded confectionary, snack, and candy products. Declaration of Michael G. Rosenberg ("Rosenberg Decl.") ¶ 2, ECF No. 78. In the early 1990s, Plaintiff introduced SOUR JACKS Original, a soft-and-chewy sour candy product. See Pl. SMF ¶ 2; Def. Resp. SMF ¶ 2. In 2003, it introduced the trapezoid-shaped version of SOUR JACKS at issue here. Pl. SMF ¶ 2; Def. Resp. SMF ¶ 2. This product is a three-dimensional trapezoid-shaped design with a flat rectangular bottom, triangular right and left sides, and trapezoidal front and back planes. Pl. SMF ¶ 4; Def. Resp. SMF ¶ 4. Plaintiff originally launched the trapezoid version in a watermelon flavor using a green, white, and red color combination (the "Wedge Product"). Pl. SMF ¶ 5; Def. Resp. SMF ¶ 5. The original version of the Wedge Product is pictured below:



Pl. SMF ¶ 5; Def. Resp. SMF ¶ 5. Plaintiff has since added other flavors to the SOUR JACKS Wedge line, including lemonade, green apple, lime, and orange. Pl. SMF ¶¶ 6, 8; Def. Resp. SMF ¶¶ 6, 8. In 2016, Plaintiff obtained a federal registration, Registration No. 5,029,701, for the

---

[1] All facts are drawn from: (1) the Statement of Material Undisputed Facts in Support of Defendant's Motion for Summary Judgment ("Def. SMF"), ECF No. 69; (2) PIM's Responses to Haribo's Statements of Undisputed Facts ("Pl. Resp. SMF") and Supplemental Statement of Disputed Material Facts ("Pl. SMF"), ECF No. 76; (3) Defendant's Response to PIM's Supplemental Statement of Disputed Material Facts ("Def. Resp. SMF"), ECF No. 81.3; and (4) the relevant record. In accordance with Local Civil Rule 56.1, any fact in a party's statement of material facts not properly disputed with a citation to record evidence "shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a).

original watermelon-flavored Wedge Product. Pl. SMF ¶ 7; Def. Resp. SMF ¶ 7. The registered mark "consists of the shape of a wedge for candy, with an upper green section with white speckles, followed by a narrow middle white section and followed by a lower red section with white speckles." Pl. SMF ¶ 7; Def. Resp. SMF ¶ 7 (internal quotation marks omitted).

Defendant is an American affiliate of a German company that sells branded candy products. Def. SMF ¶¶ 25-28; Pl. Resp. SMF ¶¶ 25-28. In October 2019, Defendant launched a watermelon gummy product in the United States. Def. SMF ¶ 43; Pl. Resp. SMF ¶ 43. Defendant's product is pictured below:

 

Def. SMF ¶ 45; Pl. Resp. SMF ¶ 45. Plaintiff claims that Defendant's product "copies the distinctive trapezoid configuration and three-color scheme constituting PIM's Trade Dress and protected by the PIM Registration." Compl. ¶ 25.

### B. Procedural History

On June 24, 2019, Plaintiff filed the Complaint in this action alleging: (1) infringement of a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1) ("Count I"); (2) trade dress infringement, false designations of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) ("Count II"); and (3) unfair competition in violation of New Jersey common law ("Count III"). Compl. ¶¶ 35-40. On October 12, 2021, Defendant filed its Second Amended Answer, Affirmative Defenses, and Counterclaims, in which it asserted affirmative

3

defenses of, inter alia, functionality ("Third Affirmative Defense") and permissible fair use ("Fourth Affirmative Defense"). ECF No. 62. Defendant also counterclaimed for a declaration of noninfringement and cancellation of Plaintiff's registration and supplemental registration due to genericness, functionality, and abandonment by course of conduct. Id.

On December 10, 2021, Defendant moved for summary judgment on: (1) all three of the claims in the Complaint; (2) Defendant's counterclaim for cancellation of Plaintiff's trademark, Registration No. 5,029,701, due to functionality; (3) Defendant's Third Affirmative Defense of Functionality; and (4) Defendant's Fourth Affirmative Defense for permissible fair use. ECF No. 66 at 6. Defendant asserts that if the Court grants its motion, its counterclaim for a declaration of non-infringement would be rendered moot, and it moves for dismissal without prejudice of all remaining counterclaims. ECF No. 68 at 6-7.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

**III.     ANALYSIS**

Defendant argues that it is entitled to summary judgment because: (1) the Wedge Product is functional and therefore ineligible for trade dress protection; and (2) Defendant's use of the shape and colors in its product constitutes fair use. See ECF No. 68 at 8. Because the Court finds that there is no genuine dispute of material fact as to the functionality of the Wedge Product design, the Court will grant Defendant's motion for summary judgment.

**A. Trade Dress Infringement Under the Lanham Act**

The Lanham Act "protects from deceptive imitation not only a business's trademarks, but also its 'trade dress.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 (3d Cir. 2014) (internal citation and quotation marks omitted). Trade dress "is the overall look of a product or business" and includes "not only a product's packaging but also its design, such as its size, shape, and color." Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp., 986 F.3d 250, 255-56 (3d Cir.), as amended (Mar. 10, 2021) (quoting and citing Fair Wind Sailing, Inc., 764 F.3d at 308; also citing Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 209 (2000)). It "is limited to protecting the owner's goodwill and preventing consumers from being confused about the source of a product." Id. at 256. The Supreme Court has cautioned against "overextend[ing trade dress law] . . . to protect all of a product's features, because 'product design almost invariably serves purposes other than source identification." Id. (quoting TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 29 (2001)).

Under the Lanham Act, trade dress protection extends only to features that are "non-functional." Shire US Inc. v. Barr Lab'ys, Inc., 329 F.3d 348, 353 (3d Cir. 2003) ("[T]rade dress protection extends only to incidental, arbitrary or ornamental product features which identify the product's source."). By contrast, "a feature's particular design is functional," and therefore

not protectable trade dress, "if it is useful." Ezaki, 986 F.3d at 255. Trade dress may be registered as a trademark on the Principal Register of the United States Patent and Trademark Office. Sweet St. Desserts, Inc. v. Chudleigh's Ltd., 69 F. Supp. 3d 530, 541 (E.D. Pa. 2014), aff'd, 655 F. App'x 103 (3d Cir. 2016). "Registration provides a party with a right of action under 15 U.S.C. § 1114 for infringement of a registered trademark" and "creates a presumption of non-functionality." Id. at 541. However, "[a] registered trademark is always subject to cancellation as functional." Id. Therefore, "functionality is a defense to infringement of a registered trademark, even if that mark has become incontestable." Id. at 542. As both parties agree, the Wedge Product's trade dress is presumptively valid because it is registered and incontestable. See 15 U.S.C. § 1115; ECF No. 68 at 22; ECF No. 77 at 16-17. Accordingly, Defendant bears the burden of proving that the trade dress is functional. See Ezaki, 986 F.3d at 259.[2]

To establish trade dress infringement under the Lanham Act, (1) "the allegedly infringing design" must be "non-functional;" (2) "the design" must be "inherently distinctive or ha[ve] acquired secondary meaning;" and (3) there must be a showing that "consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007).[3]

### B. Scope of Plaintiff's Trade Dress Claim

As an initial matter, the Court rejects Plaintiff's contention that Defendant's arguments in favor of summary judgment are "improperly confined" to the original watermelon-flavored Wedge Product. ECF No. 77 at 9. Plaintiff argues that it makes no claim for exclusive rights in colors

---

[2] Although functionality is a question of fact, Sweet St. Desserts, Inc., 69 F. Supp. 3d at 544, the Third Circuit has affirmed district courts' grants of summary judgment on the issue of functionality. See Ezaki, 986 F.3d at 253; Sweet St. Desserts, Inc., 655 F. App'x at 104.

[3] Because "New Jersey's unfair-competition and trademark laws are not significantly different from federal law," the Court's analysis of Plaintiff's "Lanham Act claims applies equally to dispose of its state-law claim[]." Ezaki, 986 F.3d at 255.

that correspond to flavors, but merely claims as its trade dress the trapezoid shape used across all flavor and color combinations. Id. at 10. Plaintiff's position is unsupported by the record. The Complaint specifically defines Plaintiff's trade dress as "a trapezoid rendered in three dimensions" with "[a] thin white band of color [that] divides the red top from the flat green base of the piece." Compl. ¶ 11. It further alleges that Plaintiff "owns a valid and subsisting federal registration (Reg. No. 5,029,701) for PIM's Trade Dress," which "identifies the mark as one that 'consists of the shape of a wedge for candy, with an upper green section with white speckles, followed by a narrow middle white section and followed by a lower red section with white speckles.'" Id. ¶ 24. While the Complaint does mention that the SOUR JACKS trapezoid product was later issued in other flavors, Plaintiff did not include those design and color combinations in its definition of "trade dress" used throughout the Complaint. See id. ¶¶ 11-12. In effect, Plaintiff seeks to amend the Complaint in its opposition to Defendant's motion for summary judgment to include all flavors in its trade dress claims. Such amendments, however, are not permitted. See Bell v. City of Phila., 275 F. App'x 157, 160 (3d Cir. 2008) (noting that "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (internal citation and quotation marks omitted). Because the Complaint, viewed on the whole, pleads trade dress

infringement of the watermelon version of the Wedge Product, the Court will focus its discussion on that iteration.[4]

### C. Functionality Due to Utilitarian Qualities

Defendant first argues that the Wedge Product's trade dress is functional because it mimics a real of piece of watermelon and communicates the flavor of the candy to consumers. See ECF No. 68 at 23-26. The Court agrees.

The Supreme Court has "recognize[d] several ways to show that a product feature is functional," including by showing that: (1) "a feature is essential to the use or purpose of the article"; (2) "it affects the cost or quality of the article"; or (3) the "exclusive use of [the feature] would put competitors at a significant non-reputation-related disadvantage." Ezaki, 986 F.3d at 257 (internal citations and quotation marks omitted). The relevant inquiry "is not whether the product or feature is useful, but whether the particular shape and form chosen for that feature is." Id. (internal citation and quotation mark omitted). In other words, "[s]o long as the design improves cost, quality, or the like, it cannot be protected as trade dress." Id. at 258.

Here, the Wedge Product's trade dress serves a functional purpose, rather than as a source identifier, and is therefore ineligible for protection under the Lanham Act. The record indicates that the Wedge Product's red, green, and white wedge-shaped design is useful because it informs

---

[4] Even if the Court were to consider only the trapezoid shape, it is likely that the Court would find it generic and therefore ineligible for trade dress protection. See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F.3d 619, 638 (6th Cir. 2002) (noting that "generic product configurations" are not protectible trade dress because "no designer should have a monopoly on designs regarded by the public as the basic form of a particular item"); Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 142 (4th Cir. 2000) ("[T]he trademark laws do not protect a generic trade dress. . . . Trade dress should be considered generic if well-known or common, a mere refinement of a commonly-adopted and well-known form of ornamentation, or a common basic shape or design, even if it has not before been refined in precisely the same way.") (internal citations and quotation marks omitted); Malaco Leaf, AB v. Promotion In Motion, Inc., 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003) (concluding that "generic design" of fish-shaped candy "along with extensive third party use of the design and Malaco's failure to police infringing third-party uses, renders the Swedish Fish design generic and unprotectable"). Because the parties do not raise genericness arguments in their briefing, the Court does not decide the issue.

8

consumers that the product is watermelon-flavored. According to Michael Rosenberg, Plaintiff's President and Chief Executive Officer, the Wedge Product "tastes like watermelon, and it looks like watermelon. It looks like what I think a watermelon should look like in my opinion from my version of a watermelon." Deposition of Michael Rosenberg ("Rosenberg Dep.") Tr. at 7:4-6, 68:2-7, ECF No. 89.14. He conceded that "[o]ftentimes the colors [of candies] match their flavors," that "some . . . or many of" Plaintiff's competitors in the watermelon product market use a "green, white and reddish color scheme on their gummies," and that Plaintiff "does not object to any third party candy companies using the 'watermelon color scheme' . . . without more." Rosenberg Dep. Tr. at 58:14-17, 62:19-24; Def. SMF ¶ 20; Pl. Resp. SMF ¶ 20. He also acknowledged that Plaintiff wants consumers "to like as many attributes of the product as we can. It enhances the potential of their purchasing." Rosenberg Dep. Tr. at 88:6-14. Similarly, Joshua Shapiro, Plaintiff's Senior Vice President of Marketing, agreed at his deposition that a real watermelon is green, white, and red in color, that the Wedge Product has the same color scheme as a real watermelon, and that sometimes real watermelons are sold in wedges. Deposition of Joshua Shapiro ("Shapiro Dep.") Tr. at 9:13-15, 59:17-22, 60:4-7, 63:21-22, ECF Nos. 71.4, 80.7. As the testimony of Plaintiff's President and Chief Executive Officer and Senior Vice President of Marketing suggests, the Wedge Product's watermelon-colored wedge-shaped trade dress is functional in this case because its resemblance to a real watermelon communicates to consumers that the candy is watermelon-flavored. See Am. Greetings Corp. v. Dan-Dee Imports, Inc., 807 F.2d 1136, 1142 (3d Cir. 1986) (finding "tummy graphics" on teddy bears functional because they "do not merely make Care Bears more appealing to the eye; they contribute to the effectiveness and performance of Care Bears as plush toy teddy bears," "serve the purpose of communicating the particular personality of each of the Care Bear characters," and "are common figures . . .

9

typically associated with the messages attributed to them by plaintiffs") (internal citations and quotation marks omitted); Ezaki, 986 F.3d at 258 (noting that functionality may be shown by "evidence . . . that a feature or design makes a product work better") (citing Am. Greetings, 807 F.2d at 1142).

Consumer studies commissioned by Plaintiff further support Defendant's assertion that the trade dress is useful and therefore functional. For example, research conducted for Plaintiff in 2015 to determine the "consumer appeal" of SOUR JACKS products found that consumers "[l]ike the shape/how the shape matches the flavor" and "[l]ike the colors/three colors of fruit" of the Wedge Product. Declaration of Laura M. Schaefer ("Schaefer Decl."), Ex. H, ECF No. 71.8 at 4, 30. In addition, in March 2017, a consumer focus group report prepared for Plaintiff indicated that the "[c]olor of [a p]roduct" as a "[p]roxy for flavor" was a factor that influenced a consumer's decision to purchase "[s]our [g]ummi" candies. Schaefer Decl., Ex. I, ECF No. 71.9 at 29. Courts have found that a product's use of color to indicate flavor serves a functional purpose. For instance, in Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, the Eleventh Circuit affirmed a district court's grant of summary judgment in favor of a defendant-competitor on a trade dress infringement claim. 369 F.3d 1197, 1209 (11th Cir. 2004). The plaintiff, an ice cream manufacturer, had alleged that the defendant infringed its product and logo designs in violation of the Lanham Act. Id. at 1200. In concluding that the product design, in its individual elements and as a whole, was functional, the Eleventh Circuit found that "the district court properly took judicial notice of the fact that the color of ice cream is indicative of its flavor" and is therefore functional. Id. at 1205. The Eleventh Circuit explained that "color is functional in this case because it is essential to the purpose of the product and affects its quality." Id. at 1206. Other courts have reached similar conclusions. See Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc., No. 14-391,

10

2015 WL 3385683, at *5 (S.D.N.Y. May 26, 2015) (noting that "the use of different colors to indicate different flavors serves a functional purpose and is thus unprotectable" in granting motion for summary judgment on trade dress infringement claim); Beech-Nut, Inc. v. Warner-Lambert Co., 346 F. Supp. 547, 550 (S.D.N.Y. 1972), aff'd, 480 F.2d 801 (2d Cir. 1973) (finding that breath mint colors symbolizing different flavors "are . . . almost as functional as words"). Accordingly, the Court finds that Defendant has met its burden of showing that the Wedge Product's trade dress is functional.

### D. Functionality Due to Significant Non-Reputation-Related Disadvantage

Defendant also argues that the Wedge Product's trade dress is functional because affording Plaintiff the exclusive right to use a green, white, and red-colored trapezoid-shaped candy would put competitors who manufacture watermelon-flavored candies at a significant non-reputation-related disadvantage. ECF No. 68 at 26-28. The Court agrees.

A party may show "a feature is functional and unprotected if the exclusive use of [the feature] would put competitors at a significant non-reputation-related disadvantage." Ezaki, 986 F.3d at 257 (internal citation and quotation marks omitted). Here, granting trade dress protection to a common watermelon-colored soft-and-chewy candy design would do precisely that. Plaintiff's own executives concede as much. President and Chief Executive Officer acknowledged that the Wedge Product "tastes like watermelon, and it looks like watermelon." Rosenberg Dep. Tr. at 68:2-5. Similarly, Plaintiff's Senior Vice President of Marketing testified that the Wedge Product has the same color scheme as a real watermelon and that real watermelons are sometimes sold in wedges. Shapiro Dep. Tr. at 59:17-22, 60:4-7, 63:21-22. Consumer research found that consumers "[l]ike the shape/how the shape matches the flavor" and "[l]ike the colors/three colors of fruit" of the Wedge Product. Schaefer Decl., Ex. H at 30. Courts have found product

11

configurations functional where "[g]ranting protection . . . would unjustifiably 'deprive competitors of alternative designs and, thus, foreclose competition from the relevant market.'" Malaco Leaf, AB, 287 F. Supp. 2d at 366 (quoting Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 377 (2d Cir. 1997)) (finding that "affording protection to a common, fish-shaped candy design would eliminate competition in this product category, where numerous third parties already compete—something which the functionality requirement is designed to prohibit").

Plaintiff's sour arguments in opposition are unavailing. According to Plaintiff, the trapezoid shape of the Wedge Product is not functional because it "cannot fairly be described as an imitation of real watermelon."[5] ECF No. 77 at 23. Plaintiff argues that in contrast to natural watermelon, which can appear as a sphere, a half-sphere, or in slices with a rounded bottom and a triangular point at the top, the Wedge Product contains distinct "parallel top and bottom lines, flat base, and sloping triangular sides." Id. Plaintiff's position is belied by the testimony of its own President and Chief Executive Officer, who conceded that the Wedge Product "looks like watermelon." Rosenberg Dep. Tr. at 68:2-5. Furthermore, as noted above, Plaintiff's own consumer research indicated that consumers ""[l]ike the shape/how the shape matches the flavor." Schaefer Decl., Ex. H at 30. In addition, while Plaintiff contends that there are "countless alternative designs" available for competitors to use, ECF No. 77 at 28, the existence of alternative configurations is "hardly dispositive" of functionality. Ezaki, 986 F.3d at 260. As the Third Circuit has noted, "even when there are alternatives, the evidence can still show that a product design is functional." Id. (finding that nine examples of alternative designs did not render product non-functional). Finally, to the extent Plaintiff argues that the Wedge Product shape acts as a source identifier because Plaintiff's advertising links the shape to its brand, that argument is

---

[5] Although obvious, it bears noting that a sour chewy candy, given its sugary quality and small shape, cannot "imitate" the real object. Certainly, bears and fish illustrate the point most dramatically.

similarly unpersuasive. See TrafFix Devices, Inc., 532 U.S. at 34-35 ("The Lanham Act . . . does not protect trade dress in a functional design simply because an investment has been made to encourage the public to associate a particular functional feature with a single manufacturer or seller.").

Because Defendant has met its burden of showing functionality, the Wedge Product is not eligible for trade dress protection under the Lanham Act and New Jersey common law. The Court therefore need not reach the parties' arguments concerning secondary meaning, likelihood of confusion, or the fair use affirmative defense. See Sweet St. Desserts, Inc., 69 F. Supp. 3d at 550 n.9 ("Because the Court has determined the Blossom Design to be functional, the Court need not consider secondary meaning or likelihood of confusion.").

The sugary red, white, and green watermelon wedge can be made by all.

### IV. CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment, ECF No. 66, is **GRANTED**. An appropriate Order accompanies this Opinion.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**